UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>TOUCH OF HEAVEN MINISTRIES,<br><br>    Debtors. | ) <br>) Chapter 11 <br>) <br>) Case No. 19-53062 <br>) <br>) Judge Alan Koschik <br>) <br>) |

**DECLARATION OF GODESS CLEMONS IN SUPPORT OF**
**<u>CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS</u>**

  I, Godess Clemons, under penalty of perjury pursuant to 28 U.S.C. § 1746, hereby declare as follows:

  1.  I am the Chairwoman of the Board of Directors of Touch of Heaven Ministries, of Akron, Ohio.

  2.  On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Northern District of Ohio (the "Court"), and filed various motions described herein requesting certain relief (collectively, the "First Day Pleadings"). I submit this declaration (the "Declaration") in support of the Debtors' chapter 11 case and the First Day Pleadings.

  3.  Except as otherwise indicated, all statements set forth in this Declaration are based upon: (i) my personal knowledge as Chairwoman of the Board of Directors of Touch of Heaven Ministries; (ii) information

supplied to me by other members of the Debtors' management or the Debtors' professionals; (iii) my review of the church's relevant documents; and/or (iv) my experience and knowledge of the church's business operations and financial affairs. I have acted as Chairwoman of the Board of Directors of Touch of Heaven Ministries since 2014.

The First Day Pleadings are intended to enable the Debtors to operate efficiently and effectively during the chapter 11 cases, as well as to avoid certain adverse consequences that might otherwise result from the commencement of the chapter 11 case. Among other things, the First Day Pleadings seek relief aimed at sustaining the going concern value of the Debtors. I also believe that, absent immediate access to the use of cash collateral and authority to make certain essential payments as sought under and described in greater detail in the First Day Pleadings, the Debtors would suffer immediate and irreparable harm to the detriment of their bankruptcy estate.[2]

4. If called to testify, I could and would testify to the facts set forth in this Declaration. I am authorized by the Debtors to submit this Declaration. I have reviewed the First Day Pleadings, and it is my belief that the relief sought therein is necessary to (i) avoid immediate and irreparable harm to the Debtors' business, and (ii) maximize and preserve the value of the Debtors' bankruptcy estates. Unless otherwise indicated, the financial information contained herein is unaudited and subject to change.

---

[2] The relief requested in the First Day Pleadings is primarily relevant to TOUCH OF HEAVEN MINISTRIES. Debtors is party to a few contracts but has few if any assets. In an abundance of caution, however, the relief is requested for Debtor.

## Background

5. The Debtors filed this chapter 11 case as a means of maintaining the going concern value of their business and assets and conducting a process to maximize value for stakeholders. This section of this Declaration provides an overview of the Debtors' business, a description of the Debtors' structure, an explanation of the reasons for the filing of the chapter 11 case, and a roadmap for how the Debtors plan to achieve their goals through this process.

### A. Overview of the Debtors' Business

6. Touch of Heaven Ministries is an independent church located at 131 High Street, Akron, Ohio 44308.

7. The church was founded in 2004 as a religious non-profit corporation.

8. Touch of Heaven Ministries, church building and their former church building is secured by a bank loan by the Herring that is in default.

### B. Events Leading to Bankruptcy

Prior to 2017 Touch of Heaven Ministries was a growing church. The church had a thriving membership and financial stability. Due to the growing membership the church had to purchase a larger building to accommodate the congregation and the community ministry. The church has tried to sell the first building unsuccessfully. The church is currently struggling to pay both mortgages, utilities and other ongoing cost. In addition, the church needed repairs. The work was done and the church has not been able to pay for the repairs in full. The church were sued by several contractors and judgments has been issued against the church.

## Plan for the Chapter 11 Case

9. The Debtors have filed this case to preserve their assets, most importantly the

church building, for the benefit of their members and the families and the community that the church serve. They intend to emerge from chapter 11 through a plan of reorganization as a stronger non-profit corporation.

10. The Debtors believe that a plan of reorganization is in the best interest of the corporation, their creditors, their vendors, and the other parties in interest.

**Facts in Support of the First Day Pleadings**

11. Concurrently with the filing of the chapter 11 cases, the Debtors have filed a number of First Day Pleadings,[3] each of which is described briefly below. I have reviewed each of the First Day Pleadings (including the exhibits thereto), and I believe that the relief sought in each of the First Day Pleadings: (i) is necessary to enable the Debtor to operate in chapter 11 with a minimum of disruption; and (ii) constitutes a critical element in maintaining the value of the Debtors' assets during the chapter 11 process. The Debtors anticipate that the Court will conduct a hearing soon after the commencement of the chapter 11 cases (the "First Day Hearing") at which the Court will hear and consider the First Day Pleadings.

12. Generally, the First Day Pleadings have been designed to meet the primary goal of continuing the Debtors' operations post petition in a manner that will minimize any potential impact on the Debtors' business. As such, the First Day Pleadings seek to: (i) obtain the continued use of the Debtors' cash; (ii) protect the Debtors' employees and other parties in interest; (iii) maintain the Debtors' operations and business throughout the chapter 11 cases; and (iv) efficiently administer the bankruptcy cases.

---

[3] Capitalized terms used in the descriptions of the First Day Pleadings and not otherwise defined herein have the meanings given to them in the applicable First Day Pleadings. The descriptions of the First Day Pleadings contained herein are only intended to be summaries.

A.  **Motion of Debtors for an Order (i) Authorizing the Debtors to (a) Pay Certain Prepetition Employee Obligations and Related Claims and (b) Continue to Provide Employee Benefits in the Ordinary Course of Business and (ii) Granting Related Relief (the "Employee Motion")**

13. The Debtors believe that they have valuable assets in their employees, and that any delay in paying prepetition compensation or benefits to their employees would significantly jeopardize the Debtors' relationships with employees and irreparably harm morale at a time when the need for the continued service of the Debtors' employees is most critical. As of the Petition Date, the Debtors employ approximately 5 employees. The employees include the church pastor, church organist, church drummer, janitor, and administrative assistant. The employees are the backbone of the Debtors' company and the Debtors' restructuring efforts, and the Debtors require the full and uninterrupted service of the employees throughout their chapter 11 cases to adequately provide services to the Debtors' customers. The employees have an intimate knowledge of the Debtors' business and operations, and any deterioration in morale, welfare and focus at this critical time undoubtedly would adversely affect the Debtors, the value of their assets and business, and ultimately, the Debtors' ability to achieve a successful outcome in the chapter 11 cases.

14. The Debtors have costs and obligations associated with their employees that arose prior to the Petition Date. Certain of those obligations are outstanding and due and payable as of the Petition Date, and certain will become due and payable in the ordinary course of business after the Petition Date. These obligations include, but are not limited to, wages, reimbursable expenses, benefit obligations and claims, and workers' compensation obligations. The Debtors seek the Court's approval to continue each of these programs in the ordinary course of business so as to maintain employee morale and dedication throughout the Debtors' chapter 11 cases.

15.     The Employee Motion does not seek to alter the Debtors' employees' compensation, paid time off, or other benefit policies at this time. The Employee Motion is intended only (i) to permit the Debtors, in their sole discretion, to make payments consistent with the Debtors' existing polices to the extent that, without the benefit of an order approving the Motion, such payments may be inconsistent with the relevant provisions of the Bankruptcy Code, and (ii) to permit the Debtors, in their discretion, to continue to honor their practices, programs and policies with respect to their employees, as such practices, programs and policies were in effect as of the Petition Date. Continued payment of all of the obligations detailed in the Employee Motion in accordance with the Debtors' prepetition business practices is in the best interest of the Debtors' estates, their creditors, and all parties in interest, and will enable the Debtors to continue to operate their business in an economic and efficient manner without disruption.

**B.     Motion of Debtors for an Order (i) Authorizing the Debtors to Pay Prepetition Withholding Taxes and (ii) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief (the "Taxes Motion")**

16.     The Debtors pay taxes to various authorities in the ordinary course of their businesses, including employee-related taxes.

As of the Petition Date, the Debtors have collected certain taxes that accrued during a prepetition period, but are not yet due to the relevant taxing authorities. The Debtors have also collected certain taxes for the benefit of the taxing authorities, which do not properly constitute property of the Debtors' estates. The Debtors seek authority to pay all such trust fund taxes in the ordinary course of business.

17. The Debtors wish to remain current on and continue to pay the trust fund taxes in a timely manner in order to prevent potential issues during the chapter 11 cases and avoid liability for non-payment. The Debtors' failure to pay these taxes would have a detrimental impact on their ability to operate their businesses in the ordinary course. Furthermore, if the Debtors failed to pay these taxes, certain taxing authorities may become involved in the Debtors' bankruptcy cases, possibly creating undue delay and complications to the Debtors' restructuring efforts.

18. The Debtors' withholding taxes do not constitute property of the Debtors' estates, and such amounts are not available to the Debtors' creditors. Therefore, immediate payment of the relevant taxes will not adversely affect the Debtors' estates or their creditors. Uninterrupted operations are necessary for the Debtors to maintain their reputations, avoid significant variations in their cash flow, and preserve the value of the businesses for a sale process. The Debtors believe that the estates will not be materially harmed if the Court permits the Debtors to pay the relevant trust fund taxes.

C. **Motion of Debtors for Interim and Final Orders (i) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services; (ii) Determining That Utilities are Adequately Assured of Payment; and (iii) Establishing Procedures for Determining Requests for Additional Assurance (the "Utilities Motion")**

19. In connection with the operation of their businesses, the Debtors obtains various utility services, such as gas, electric, water, telephone, cable/internet, waste, and other services

(collectively, the "Utility Services") from certain utility companies (collectively, the "Utility Companies") for the Debtors' company located in Akron, Ohio. Any interruption in the Utility Services, however slight, would jeopardize the restructuring efforts of the Debtors, the Debtors' ability to operate their facilities, and the safety of the Debtors' employees.

20. By the Utilities Motion, the Debtors seek interim and final orders (the "Interim Utility Order" and "Final Utility Order," respectively): (i) prohibiting the Utility Companies from altering, refusing, or discontinuing Utility Services (as defined below) to, or discriminating against, the Debtors on account of amounts outstanding prior to the Petition Date or any perceived inadequacy of the Debtors' proposed adequate assurance; (ii) determining that the Utility Companies, including, but not limited to, those listed in the Utilities Motion, have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code through the provision of a two week deposit per requests from utility companies; and (iii) approving the Debtors' proposed procedures for determining requests for additional adequate assurance of payment to Utility Companies for future utility services.

**D.  Motion of Debtors for an Order Scheduling Expedited Hearing to Consider Certain First Day Pleadings and Approving Notice Thereof (the "Expedited Hearing Motion")**

21. The First Day Pleadings described above involve matters that require an emergency and expedited hearing and the Debtors are requesting that the Court, on an *ex parte* basis, schedule the First Day Hearing as soon as the Court's schedule will permit and that the Court approve the form of notice thereof.

22. The relief requested in the Expedited Hearing Motion is necessary to obtain expedited relief on the First Day Pleadings. As described in detail in each of the First Day

Motions, the expedited relief requested in the First Day Pleadings is essential to: (a) obtain financing; (b) ensure a smooth transition into chapter 11; (c) maintain the Debtors' operations and business throughout the chapter 11 cases; (d) efficiently administer the bankruptcy case; and (e) establish the basis for the Debtors' restructuring efforts. The Expedited Hearing Motion and the First Day Pleadings are of the type typically heard on an emergency or expedited basis, and any delay in authorizing the relief therein could have a severe and irreparable effect on the Debtors' operations and their transition into operating as chapter 11 debtors in possession.

23. Pending entry of an order approving the Expedited Hearing Motion, the Debtors proposes to serve the "Notice of Expedited Hearing on First Day Motions," which is attached as <u>Exhibit A</u> to the Expedited Hearing Motion, as soon as possible to the various notice parties identified in the Expedited Hearing Motion, including each party whose rights are affected by the First Day Pleadings.

## **Conclusion**

24. For all of the reasons stated herein, I believe that the approval of the First Day Pleadings is in the best interest of the Debtors, their estates, their creditors, and all parties in interest.

*[Remainder of page intentionally left blank; signature page to follow]*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

December 31, 2019

/s/ Godess Clemons
Godess Clemons
Chairwoman of Board of Directors
Touch of Heaven Ministries