This document was signed electronically on February 28, 2022, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: February 28, 2022



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

## THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | CASE NO: 19-53062 |
| TOUCH OF HEAVEN MINISTRIES, | ) | |
| INC., | ) | |
| AKRON, OHIO | ) | JUDGE ALAN KOSCHIK |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## ORDER CONFIRMING CHAPTER 11 PLAN
## DATED SEPTEMBER 30, 2021

This matter came before the Court for consideration upon the filing of Debtor's

Amended Chapter 11 Plan of Reorganization Dated September 30, 2021(Docket #200),

and the Amended Disclosure Statement Dated September 30, 2021(Docket #201).

A hearing was held on February 1, 2022. Proper notice was served to all

creditors. At the hearing on confirmation, the Court considered the statements of counsel

of record, the Plan, Disclosure Statement, Debtor's Brief in Support of Confirmation, Brief Regarding Absolute Priority Rule, Affidavit and Report of Martin McClish of Herring Bank, as Trustee for the Benefit of the Bondholders of Debtor, in Support of Ballot, Brief in Support of Post-Petition Attorney Fees and Interest, and the Ballot Report submitted by the Debtor in this case.

Pursuant to 11 U.S.C §1129, the Court undertook a detailed analysis of all factors outlined in the Bankruptcy Code and determined that the requirements for confirmation set forth in 11 U.S.C. §1129(a) have been satisfied;

**WHEREFORE THE COURT HEREBY ORDERS AS FOLLOWS:**

**A.** The Plan and each of the provisions thereof shall be, and hereby are, confirmed in each and every respect pursuant to Section 1129 of the Bankruptcy Code.

**B.** Upon the entry of this Confirmation Order, the terms of the Plan shall be, and hereby are, deemed binding upon the Debtor, the Reorganized Debtor, and all holders of claims in interest.

**C.** All assets of the Debtor are now property of the Reorganized Debtor and shall be paid to, held, administered, prosecuted, and distributed by the Reorganized Debtor who will also assume the role of carrying out all of the provisions of the Plan, subject in all respects to the Plan.

**D.** Pursuant to Section 1141 of the Bankruptcy Code, the Debtor upon confirmation will be discharged from any debt that arose before the date of confirmation and any debt of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, other than the debts that are non-dischargeable pursuant to 11USC § 523 or that are provided for in the Plan (including but not limited to the debt owed to Herring Bank as Trustee, which remains in full force

and effect on the terms allowed in the Plan), whether or not (i) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan.

**E.** All holder of claims subject to discharge upon Confirmation of the Plan will be, upon entry of a discharge order, permanently enjoined from taking any of the following actions on account of any such discharged claims, debts, or liabilities or terminated interest or rights:

(a) Commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor or its property;

(b) Enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Reorganized Debtor or its property;

(c) Creating, perfecting, or enforcing any lien or encumbrance against the Reorganized Debtor or its property

(d) Asserting against the Reorganized Debtor or its property a right of subordination of any kind against any debt, liability, or obligation; and

(e) Commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**F.** Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 case as is legally permissible, and to the extent set forth in the Plan.

**G.** Professionals or other entities asserting an administrative expense claim for services rendered before the Effective Date or otherwise, must file and serve on the Reorganized Debtor and the Office of the United States Trustee, an

application for final allowance no later than the first business day that is 30 days after the Effective Date of this Order. The attorneys' fees and costs of Herring Bank, as Trustee, are treated as stated in the Plan and will not require an application for allowance, the same having been allowed on the terms of the Plan as approved at the confirmation hearing.

H. All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtor. On and after the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtor and/or the Reorganized Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

I. As required by the Plan, the Reorganized Debtor is ordered to sign general warranty deeds to Herring Bank, as Trustee, for both the Johnston Street and High Street properties and to immediately deliver the deeds to Herring, as Trustee. The deeds will be held in escrow by Herring Bank, as Trustee, and will not become effective unless there is an uncured default by Debtor, as explained in and on the terms as stated in the Plan.

### 

Submitted by:

/s/ James Hausen
James Hausen
Bates and Hausen LLC
Ohio Reg. No. 0073694

215 E. Waterloo Rd, Suite 17
Akron, OH 44319
Phone: 234-678-0626
Fax:     234-201-6104
Counsel for the Debtor and
Debtor-in-Possession

Parties to be served by electronic mail via ECF:

UST at registered address
Kate M Bradley at kate.m.bradley@usdoj.gov

Parties to be served by regular U.S. Mail:

See Attached Mailing Matrix

In re:                                    *       CASE NO. 19-53062
                                          *
TOUCH OF HEAVEN MINISTRIES, INC           *       CHAPTER 11
                                          *
                                          *       JUDGE ALAN KOSCHIK
                                          *
Debtors                                   *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## DEBTOR'S CHAPTER 11 PLAN DATED SEPTEMBER 30, 2021

*Touch of Heaven Ministries* ("Debtor"), Debtor-in-Possession, through the undersigned counsel, hereby submit to its creditors, as proponent, this Plan of Reorganization (the "Plan") pursuant to Section 1121, *et seq.,* of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

A detailed discussion of the Plan and its implementation is found in the Disclosure Statement of even date herewith. The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

## <u>ARTICLE I - DEFINITIONS</u>

1.1     "<u>Administrative Bar Date</u>" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2     "<u>Administrative Claim</u>" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3     "<u>Allowed Claim</u>" means a Claim against the Debtor(s) (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final

Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4 "<u>Assets</u>" means all property, real or personal, in which the Debtor(s) has/have an interest.

1.5 "<u>Avoidance Actions</u>" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.6 "<u>Ballot</u>" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7 "<u>Bankruptcy Code</u>" means Title 11 of the United States Code.

1.8 "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division at Akron, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9 "<u>Bankruptcy Rules</u>" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10 "<u>Bar Date</u>" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The bar date for the filing of pre-petition claims against the Debtor was June 19, 2020, with government claims due by June 30, 2020. Under the Plan, Administrative Claims must be filed by the first Business Day thirty (30) days after the Effective Date.

1.11 "<u>Business Day</u>" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Ohio are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12 "<u>Case</u>" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing Case No. ***19-53062-amk.***

1.13 "<u>Cash</u>" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14 "<u>Claim</u>" means a claim as defined in § 101(5) of the Code.

1.15 "<u>Claimant</u>" means a Person holding a Claim against the Debtor(s).

1.16 "<u>Class</u>" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17 "<u>Collateral</u>" means any property or interest in property of the Debtor(s) subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18 "<u>Confirmation</u>" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19 "<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20 "<u>Confirmation Hearing</u>" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21 "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan.

1.22 "<u>Creditor</u>" means the holder of a Claim.

1.23 "<u>Days</u>" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24 "<u>Debtor</u>" means Touch of Heaven Ministries, Inc.

1.25 "<u>Disclosure Statement</u>" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.26 "<u>Disputed Claim</u>" means a Claim:

(a) which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended, or

(b) which is listed as disputed under any provision of this Plan, or

(c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27  "<u>Effective Date</u>" means the first Business Day after the Confirmation Order becomes a Final Order.

1.28  "<u>Equipment</u>" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29  "<u>Exempt Property</u>" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.30  "<u>Estate</u>" means the bankruptcy estate(s) of the Debtor. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31  "<u>Executory Contracts</u>" means all contracts, including unexpired leases, to which the Debtor(s) was/were a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.32  "<u>Final Decree</u>" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33  "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34  "<u>Inventory</u>" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35  "<u>Lien</u>" has the meaning set forth in §101(37) of the Code.

1.35A  "<u>Material Default</u>" of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required

under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 21 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred. Time periods for notice and cure may be altered from the above by specific provision provided for herein.

1.36 "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.37 "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.38 "Petition Date" means December 31, 2019, the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtor.

1.39 "Plan" means this Plan, as it may be amended from time to time.

1.40 "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.41 "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.42 "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.43 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before or after the Confirmation Date.

1.44 "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.45 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.46 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.47 "Secured Claim" means any Claim, debt, or demand against the Debtor(s) as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor(s), but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.48 "Unexpired Lease" means a lease of personal or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49 "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50 "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 <u>Class A (Priority (non-tax) Claims)</u>: Class A consists of Priority Claims under § 507 other than Administrative Claims and Priority Tax Claims.

2.2. <u>Class B (Summit County Fiscal Office Claim on 131 S. High St, Akron, OH 44308)</u>: Class B consists of the secured claim of *Summit County Fiscal Office* which is secured by a tax lien on 131 S. High St, Akron, OH 44308. The Debtor intends to continue paying on this tax claim per the contract it signed with Summit County. This class is not impaired.

2.3 <u>Class C (Summit County Fiscal Office Claim on 1104 Johnston St, Akron, OH 44305)</u>: Class C consists of the secured claim of *Summit County Fiscal Office* which is secured by a tax lien on 1104 Johnston St, Akron, OH 44308. Debtor

intends to continue paying on this tax claim per the contract it signed with Summit County until the building is sold.  This class is not impaired.

2.4.    Class D (Herring Bank): The Class D claim consisting of the Secured Claim of Herring Bank as Trustee for the benefit of the Bondholders of Touch of Heaven Ministries, Inc. ("Herring") is impaired and the bondholders shall be allowed to vote to accept or reject the Plan as an Impaired Class. The bondholders will be independently polled by Herring in order to maintain the confidentiality of the identities of the bondholders as called for in the Trust Indentures governing the bond issues and as therefore agreed to by the Debtor. Herring will cast a single ballot voting to accept or reject the plan on behalf of the bondholders that gives an accounting of the results of such polling. An exemplar of the bondholder letter and ballot proposed to be used to poll the bondholders is attached as Exhibit "E" to the Disclosure Statement. This class is impaired.

2.5    Class E-1 (Fromby Construction): Class E-1 consists of a mechanic's lien of Fromby Construction on 1104 Johnston St.  Debtor intends to void this lien under **11 U.S.C. § 506(d)**. This class is impaired.

2.6    Class E-2 (Certified Professional Restoration Secured Claim on 1104 Johnston St and 131 S. High St): Class E-2 consists of the secured claim of Certified Professional Restoration which filed a judgment lien in the Summit County Fiscal Office.   Debtors intends to void this lien under **11 U.S.C. § 506(d)**. This class is impaired.

2.6    Class E (General Unsecured Claims). Class E consists of all general unsecured claims against the Debtor, including Classes E-1 and E-2. Holders of Class E claims shall be paid, *pro rata,* a total of $0.00.

The *pro rata* share of the claimed amount of any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in an interest bearing bank account until a Final Order is entered. When Final Orders are entered disallowing or allowing and liquidating all Class E claims, the remaining funds in the bank account shall be distributed to the holders of all Class E claims *pro rata*. Payments on Class E claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. This class is impaired.

## ARTICLE III– TREATMENT OF CLAIMS AND INTERESTS

3.1    The following chart identifies the Plan's proposed treatment of Classes A through E.

| Class | Claim Type | Estimated Allowed Claims and Equity Interests | Treatment/Voting Status | Estimated Recovery to Holders of Allowed Claims and Equity Interests |
|---|---|---|---|---|
| A | Priority(non-tax claims) | $0 | Not Impaired/Not Entitled to Vote | 100% |
| B | Secured Claim – Summit County Fiscal Office on 131 S. High St, Akron, OH 44308 | $130,615.59 | Impaired/Not Entitled to Vote | 100% |
| C | Secured Claim – Summit County Fiscal Office on 1104 Johnston St, Akron, OH 44305 | $28,681.83 | Impaired/Not Entitled to Vote | 100% |
| D | Secured Claim – Herring Bank on 1104 Johnston St and 131 S. High St. and associated personal property | $1,257,788.00 (not including trustee maintenance fees or other fees and expenses, which will be added) | Impaired/Entitled to Vote | 100% |
| E-1 | Secured Claim – Fromby Constructions on 1104 Johnston St. | $86,691.94 | Impaired/Deemed to Reject | 0.0% |
| E-2 | Secured Claim – Certified Professional | $25,025.49 | Impaired/Deemed to Reject | 0.0% |

| | Restoration (Judgment lien) | | | |
|---|---|---|---|---|
| E | General Unsecured Claims | $45,023.01 | Impaired/Deemed to Reject | 0.0% |

3.2. <u>Administrative Expenses</u>. Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Professional Fees, as approved by the Court (Attorney Fees) | $10,000.00 | Paid in full on the effective date of the Plan. |
| Professional Fees, as approved by the Court(fees for HD Davis Accountants) | $4,890.00 | Paid in full on the effective date of the Plan |
| BB&T Commercial Equipment Lease | $37,257.97 | DIP will assume the lease and continue making payments of $1201.87/month |
| SBA DIP Loan | $135,300.00 | DIP will pay $578/month starting May 22, 2022, for 30 years at 2.75%. The interest will accrue from the date of the promissory note per the terms of the agreement. This will pay the note in full. |

| | | |
|---|---|---|
| Office of the U.S. Trustee Fees | $650.00 | Paid in full on the effective date of the Plan |
| TOTAL | $188,097.57 | |

The total unpaid professional fees will be determined at the confirmation hearing or by fee application thereafter, although additional fees will be incurred before the Effective Date.

All reports and fees due and payable pursuant to section 1930 of Title 28 of the United States Code prior to the Effective Date shall be filed and paid by the Debtor. On and after the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee.

Debtor shall remain obligated to pay quarterly fees to the Office of the United States Trustee until the earliest of the Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

3.3. <u>Priority Taxes (Unclassified)</u>: The State of Ohio filed a proof of claim for $189.24 as unsecured priority and $568.93 as unsecured general (Claim No. 3). The unsecured priority claim shall be paid in full by the 30th day after the Effective Date of the plan. The unsecured general claim shall be part of Class E

3.4 <u>Class A (Priority (non-tax) Claims)</u>: The Debtor is unaware of any such claims, and no proofs of claim in this class have been filed. In the unlikely event that there are any allowed Claims in Class A, they shall be paid in full, in cash, by the Debtor on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. This class is not impaired.

3.5 <u>Class B (Summit County Fiscal Office for Real Property Taxes on 131 S. High St, Akron, OH 44308</u>: The Debtor intends to stay current on their payment plan with Summit County by paying $1994/month for 60 months which started in August 2020. This class is impaired.

3.6 <u>Class C (Summit County Fiscal Office for Real Property Taxes on 1104 Johnston St, Akron, OH 44305</u>: The Debtor intends to stay current on their payment plan with Summit County by paying $267/month that started prior to the commence of this Bankruptcy. This class is impaired.

3.7    Class D (Herring Bank Secured Claim on 1104 Johnston St and 131 S. High St and associated personal property): The Class D claim consisting of the Secured Claim of Herring Bank as Trustee for the benefit of the Bondholders of Touch of Heaven Ministries, Inc. ("Herring") is impaired and the bondholders shall be allowed to vote to accept or reject the Plan as an Impaired Class using the polling process and collective ballot described above. Any default, whether monetary or nonmonetary as discussed in this Section 3.7 regarding Class D, will be considered a Material Default under this Plan. The Class D claim is an Allowed Secured Claim and shall be paid in full as follows:

Herring's claim as of the Petition Date on December 31, 2019, was in the amount of $1,257,788.00 before pre-petition attorney and trustee fees, which will be added thereto. From that total amount, Debtor will be given credit for all post-petition adequate protection payments paid prior to the first payment made under this Plan.

Although the debtor does not believe Herring Bank is fully secured, Herring's claim is fully securedhaving elected to be treated as such pursuant to 11 USC § 1111(b). Accordingly, Herring's post-petition fees and costs, including its maintenance fees for administration of the bond issue and its attorney fees and costs, are allowed as part of Herring's secured claim. No separate application for attorney fees and costs will be required, it being understood that such attorney fees and costs are in the approximate amount of $38,000.00 at the time of filing of the Disclosure Statement. These attorney fees and costs, including any additional attorney fees and costs incurred through the date of full payoff of the indebtedness to the bondholders, will be due and payable in full upon the sale of the Johnston Street property and paid from the proceeds thereof and/or in a balloon with the final payment to Herring.

Herring's claim will be permitted by allowing Herring to retain its mortgage on the real property located at 1104 Johnston St and 131 S. High St and the associated personal property of Debtor located at these locations in Akron, Ohio (the "Property"), said real property being more particularly described on the attached Exhibit "A." As stated, Herring's claim is fully secured under the Plan by virtue of its election under 11 USC § 1111(b) and is provided for in full in this Class D claim.

Debtor will use its best efforts to sell the real property located at 1104 Johnston Street and apply the proceeds to Herring's claim, but may only close on any sale at a price less than full payoff of Herring's claim if sold with the consent of Herring. Debtor will control the marketing of the Johnston Street location, but Herring will have access to complete information from any realtor for Debtor.

Debtor will continue to pursue tax exemption on all of the Property, will keep all taxes current, will keep the Property insured and maintained, will complete and/or maintain mold abatement at 131 S. High St, will pay all utilities at the locations and will keep them current, and will maintain a single bank account. Debtor will cooperate with reasonable inspection of the Property and books and records upon request of Herring.

Herring's claim will accrue 4% interest per annum beginning January 1, 2020, the day after the Petition Date, and Debtor will make payments of $1,000.00 per week beginning the first Monday following confirmation of this Plan and will make like payments each Monday thereafter until the expiration of ten (10) years from the Petition Date, and therefore until Monday, December 31, 2029, when Debtor will make a final balloon payment of all principal, interest, and all other amounts owing. Debtor will make all payments on time and in the correct amounts and Herring will be entitled to recover its additional fees and costs that may arise and be due to Herring because of any default by Debtor. Included as part of the weekly payments, $61.00 of each such payment ($17.00 per week for Trust No. 6084 and $44.00 per week for Trust No. 6134) will be allocated to cover the maintenance fees of Herring for which Debtor is obligated under the Loan Documents (defined below).

At the Petition Date, maintenance fees due to Herring of $427.00 were in arrears. Furthermore, maintenance fees due to Herring have not been collected during the pendency of the bankruptcy and such fees through the date of the filing of the Disclosure Statement total an additional $4,819.00. Therefore, the total arrearage in the amount of $5,246.00 (along with any other maintenance fees that may be in arrears at the time of confirmation) will be paid as explained in the next paragraph.

Debtor is obligated pre-confirmation to pay $1,000.00 per week adequate protection payments to Herring from January 11, 2021, through confirmation of this Plan. At that point, as stated above, payments of $1,000.00 per week under the Plan are to begin. To the extent of any arrearage on such adequate protection payments at the time of confirmation, the gross amount of the adequate protection arrearage along with the gross amount of the maintenance fee arrearage (together, the "Arrearage") will be divided by 52 weeks and that amount, without interest, will be paid to Herring by adding such amount to the $1,000.00 weekly payments otherwise due hereunder. In that way, the Arrearage, without interest, will be satisfied within one year. Once the Arrearage has been paid in full, the weekly installment payments will return to $1,000.00 per week.

The original value of each original bond will be replaced with a new claim value equal to the outstanding principal and accrued interest due to its holder as of

the Petition Date, December 31, 2019, as calculated by Herring. The bonds will be paid to the bondholders on a semi-annual basis from funds collected after expenses.

Herring will retain its liens on the Property as set forth in the following documents:
- First Mortgage Trust Indenture, Trust Number 6084, executed by Debtor, dated July 24, 2012;
- Supplement to Trust Indenture, Trust Number 6134, executed by Debtor, dated February 20, 2017;
- Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, executed by Debtor, dated October 22, 2012, and recorded as Document Number 55902165 in the Summit Co Fiscal Office;
- Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, executed by Debtor, dated March 29, 2017, and recorded as Document Number 56287314 in the Summit Co Fiscal Office; and
- UCC Financing Statement, File No. OH00162271432, as amended by File No. 20163510346 and continued by File No. 20171230352.

Except as specifically modified by the Plan, the provisions of the foregoing documents and any other associated documents/agreements between Debtor, on one hand, and Herring, on the other (collectively the "Loan Documents"), shall remain in full force and effect, including but not limited to: (a) the provisions concerning the Trustee's discretionary, and other powers, lien rights, and rights to indemnification in the event of default or otherwise; (b) the provisions concerning the use of a sinking fund account for the collection of the monthly payments from the Debtor, the payment of expenses and fees as authorized therein, and the payment to the bondholders of the principal and interest collected; and (c) the provisions concerning the Debtor's continuing obligation to maintain insurance, and pay any property taxes due, on the Property. The provisions regarding the Debtor's obligation to pay the fees and expenses of Herring shall remain an obligation in addition to the Debtor's weekly principal and interest payment obligation.

Immediately upon confirmation (i.e., the same day and at the conclusion of the confirmation hearing), Debtor will sign general warranty deeds to Herring for both the Johnston Street and High Street properties. The deeds will be held in escrow by Herring and will not become effective unless there is an uncured default by Debtor as explained below. Upon any uncured default, Herring will have the right to write in the effective date of the deeds and record the same to effect the transfer of the properties to Herring. Herring can record the deeds without further court order or notice and the Debtor will vacate the locations voluntarily within 15 days and will assemble personal property collateral and leave the same at each respective location. Herring has the right to record the deeds upon monetary or non-monetary default after the 30-day cure period. Debtor will not contest the transfer and will cooperate with surrender of all collateral, real and personal. Herring reserves the

right to foreclose rather than accept either deed if necessary to cut off any inferior liens. The Debtor will not challenge any foreclosure with any bankruptcy filing or otherwise. On the other hand, should Debtor pay Herring in full under this Plan, the deeds will be destroyed and the liens will be released.

Should Debtor default on its weekly payment obligations under the Plan, Herring will give notice of same and Debtor will have 30 days from notice of default to cure the same. If Debtor fails to cure the default, Herring will send a notice of uncured default and that will trigger Herring's right to exercise all of its default remedies, including Herring's right to take action to collect the debt owed, including but not limited to, recording of the deeds held in escrow or foreclosing on any liens against the Property securing Herring's claim, as set forth in the Loan Documents.

Should Debtor convert this case or dismiss and re-file, no automatic stay will apply against Herring. Debtor will not be allowed to re-impose the automatic stay to delay or preclude Herring or its assigns from recording the deeds held in escrow or foreclosing upon, repossessing, or selling any part of the Property under the terms of the Loan Documents in the event of a default and failure to timely cure the default by the Debtor under the terms of this Plan. This provision shall be binding in any other case filed under the Bankruptcy Code purporting to affect or include the Property. A certified copy of this Plan and the Order confirming this Plan may be recorded in the real estate records in Summit County, Ohio, in accordance with Ohio state laws governing notices of interests and liens in real property, and when recorded shall serve notice of this restriction in any other bankruptcy proceeding filed by Debtor or purporting to affect or include, in rem, the Property.

Notwithstanding any other terms of this Plan, Debtor hereby releases any and all claims against Herring through the date of confirmation and commits not to object to Herring's claim or to challenge valuations of any of Herring's collateral or Herring's status as a fully secured creditor. This class is impaired.

3.8    Class E-1 (Fromby Construction Secured Claim on 1104 Johnston St): Class E-1 consists of the secured claim of Fromby Construction which filed a mechanic's lien on 1104 Johnston St. **The property securing the claim of *Fromby Construction*, which is secured against *1104 Johnston St* shall be valued under 11 U.S.C. § 506(a) at $301,000 as of the Effective Date of the plan. As the claim of *Summit County Fiscal Office* reflects a Principal Balance of $26,025.59 and the claim of *Herring Bank* reflects a Principal Balance of $439,084.04 as of the Petition Date, which is greater than the value of the collateral, the Class E-1 claim is wholly unsecured and shall be treated for all purposes as a Class E claim, and the Mechanic's Lien securing the Class E-1 Claim shall be deemed void under 11 U.S.C. § 506(d) upon confirmation.**    This class is impaired.

3.9    Class E-2 (Certified Professional Restoration Secured Claim on 1104 Johnston St and 131 S. High St): Class E-2 consists of the secured claim of Certified Professional Restoration which filed a judgment lien in the Summit County Fiscal Office.

1104 Johnston St, Akron, OH

**The property securing the claim of *Certified Professional Restoration* which is secured against *1104 Johnston St* shall be valued under 11 U.S.C. § 506(a) at $301,000.00 as of the Effective Date of the plan.**

**As the claim of *Summit County Fiscal Office* reflects a Principal Balance of $26,025.59 and the claim of *Herring Bank* reflects a Principal Balance of $439,084.04 as of the Petition Date, which is greater than the value of the collateral, the Class E-1 claim is wholly unsecured and shall be treated for all purposes as a Class E claim, and the Judgment Lien securing the Class E-2 Claim shall be deemed void on 1104 Johnston St, Akron, OH under 11 U.S.C. § 506(d) upon confirmation.**

131 S. High St, Akron, OH

**The property securing the claim of *Certified Professional Restoration* which is secured against *131 S. High St* shall be valued under 11 U.S.C. § 506(a) at $686,770.00 as of the effective date of the plan.**

**As the claim of *Summit County Fiscal Office* reflects a Principal Balance of $98,822.50 and the claim of *Herring Bank* reflects a Principal Balance of $856,001.57 as of the Petition Date, which is greater than the value of the collateral, the Class E-2 claim is wholly unsecured and shall be treated for all purposes as a Class E claim, and the Judgment Lien securing the Class E-2 Claim shall be deemed void on 131 S. High St, Akron, OH under 11 U.S.C. § 506(d) upon confirmation.**

This class is impaired.

3.10.    Class E (General Unsecured Claims). Class E consists of all general unsecured claims against the Debtor, including Classes E-1 and E-2. Holders of Class E claims shall be paid, *pro rata,* a total of $0.00.

The *pro rata* share of the claimed amount of any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in an interest bearing bank account until a Final Order is entered. When Final Orders are entered disallowing or allowing and liquidating all Class E claims, the remaining funds in the bank account shall be distributed to the holders of all Class E claims *pro rata*. Payments on Class E claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. This class is impaired.

**Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor.**

## ARTICLE IV - EXECUTION OF PLAN

The Debtor shall fund this Plan from income from tithes and offerings. The Debtor shall retain the Assets of the estate, and shall pay the operating expenses for the business, and pay the creditors the amounts set forth in the Plan from the proceeds thereof. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves their right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

## ARTICLE V - RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor, the Debtor's operations and Assets for the following purposes until the Court enters an Order closing the case:

A.      To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B.      To hear and determine all adversary proceedings and contested matters;

C.      To allow and approve or disapprove any administrative expenses not previously allowed;

D.      To determine and resolve questions concerning the existence of defaults under the Plan;

E.      To modify the Plan pursuant to § 1127(b) of the Code;

F.      To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G.      To issue any Order necessary to carry out the Plan.

## ARTICLE VI - EXECUTORY CONTRACTS AND LEASES

BB&T Commercial Equipment Capital filed a proof of claim for $37,257.97 as unsecured general (Claim No. 2).  The debtor will assume this lease and continue to make payments on the lease.

Any other prepetition Executory Contracts and Leases in effect as of the Effective Date (other than any leases to tenants) and not specifically rejected will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, its Estate, Assets, or properties. All Rejection Claims shall be General Unsecured Claims.

## ARTICLE VII - MODIFICATION OF PLAN

The Debtor may submit modifications to the Plan at any time before Confirmation pursuant to § 1127(a) of the Code, and thereafter in accordance with § 1127(b).

## ARTICLE VIII - DISCHARGE AND CLOSING

A.      Upon confirmation of the Plan, the Debtor shall be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code.

B.      Upon substantial consummation of the plan, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan.

## ARTICLE IX - MISCELLANEOUS

No creditor may take any collection action against Debtor or property of the estate or of the Debtor so long as Debtor is not in Material Default in performing its obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

Respectfully submitted,

/s/ James F. Hausen
James F. Hausen (0073694)
Attorney for Debtor(s)
215 E. Waterloo Rd, Suite 17
Akron, OH 44319
Phone: 234-678-0626
Fax: 234-201-6104

## Exhibit "A"

Real Property commonly known as 1104 Johnston St. Akron, Ohio 44305 and further described as follows:

PARCEL 1:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO; AND KNOWN AS BEING PART OF LOT NUMBER 1 IN STRIP OR TRACT ONE OF SPRINGFIELD TOWNSHIP, BOUNDED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF LANDS DEEDED BY JOHN BENHAM AND MELISSA BENHAM TO JAMES BURCH, BY DEED RECORDED IN VOLUME 13, PAGE 366 SUMMIT COUNTY RECORDS; THENCE WEST ON THE TOWNSHIP ROAD (NOW JOHNSTON STREET) 62 FEET THENCE SOUTH 1 1/2 DEGREES EAST 2.50 CHAINS; THENCE EAST 62 FEET; THENCE NORTH 1 1/2 DEGREES WEST 2.50 CHAINS TO THE PLACE OF BEGINNING, BEING THE SAME PREMISES CONVEYED BY NORTON C. ESTEY TO JOSEPHINE ROBINSON, BY DEED DATED DECEMBER 11, 1879, AND RECORDED IN SUMMIT COUNTY RECORDS, VOLUME 117, PAGE 445.

PPN: 68-26822 060093004014000 & 68-55645 060093004015001

PARCEL 2:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO:

BEING LOT NUMBER 4 IN AN ALLOTMENT MADE FOR CHARLES E. AKERS AND A. D. ALEXANDER, AS SURVEYED AND NUMBERED AND RECORDED IN PLAT BOOK 12, PAGE 21, SUMMIT COUNTY OHIO RECORDS.

PPN: 68-26821 060093004020000

PARCEL 3:
TRACT A:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO:

AND KNOWN AS BEING PART OF LOT NUMBER 1, TRACT NUMBER 1 OF THE ORIGINAL TOWNSHIP OF SPRINGFIELD, AND BOUNDED AND DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT IN THE CENTER LINE OF JOHNSTON STREET AND IN THE NORTH LINE OF SPRINGFIELD TOWNSHIP 165 FEET EASTERLY FROM THE WESTERLY LINE OF SPRINGFIELD TOWNSHIP; THENCE SOUTHERLY PARALLEL TO THE WESTERLY LINE OF SPRINGFIELD TOWNSHIP 165 FEET TO A POINT; (AN OLD IRON STANDS ON THE STREET LINE 30 FEET SOUTHERLY FROM THE CENTER LINE OF JOHNSTON STREET); THENCE EASTERLY PARALLEL TO THE CENTER LINE OF JOHNSTON STREET 44.46 FEET; THENCE NORTHERLY PARALLEL TO THE WESTERLY LINE OF SPRINGFIELD TOWNSHIP 165 FEET TO THE STREET CENTER; THENCE WESTERLY ON THE STREET LINE OF JOHNSTON STREET, 44.46 FEET TO THE PLACE OF BEGINNING, BE THE SAME MORE OR LESS.

TRACT B:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO:

AND KNOWN AS BEING PART OF LOT NUMBER 1, TRACT NUMBER 1 OF THE ORIGINAL TOWNSHIP OF SPRINGFIELD, AND BOUNDED AND DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT IN THE CENTER LINE OF JOHNSTON STREET AND IN THE NORTH LINE OF SPRINGFIELD TOWNSHIP 209.45 FEET EASTERLY FROM THE WESTERLY LINE OF SPRINGFIELD

TOWNSHIP TO THE TRUE BEGINNING POINT; THENCE SOUTHERLY PARALLEL TO THE WESTERLY LINE
OF SPRINGFIELD TOWNSHIP 165 FEET TO A POINT, (AN OLD IRON STANDS ON THE STREET LINE 30
FEET SOUTHERLY FROM THE CENTER LINE OF JOHNSTON STREET); THENCE EASTERLY PARALLEL TO
THE CENTER LINE OF JOHNSTON STREET 2.54 FEET TO A POINT; THENCE NORTHERLY PARALLEL TO
THE WESTERLY LINE OF SPRINGFIELD TOWNSHIP 165 FEET TO THE STREET CENTER; THENCE
WESTERLY ON THE STREET LINE OF JOHNSTON STREET 2.54 FEET TO THE PLACE OF BEGINNING, BE
THE SAME MORE OR LESS.

PPN: 68-26822 060093004014000 & 68-55645 060093004015001

PARCEL 4:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO:

AND KNOWN AS BEING A PART OF TRACT NUMBER 1 IN THE ORIGINAL TOWNSHIP OF SPRINGFIELD,
NOW IN THE CITY OF AKRON, MORE FULLY BOUNDED AND DESCRIBED AS FOLLOWS, TO-WIT:

BEGINNING AT A POINT WHICH IS THE INTERSECTION OF THE SOUTHERLY LINE OF JOHNSTON
STREET WITH THE EASTERLY LINE OF SOUTH ARLINGTON STREET; THENCE ALONG THE SOUTHERLY
LINE OF JOHNSTON STREET NORTH 88 1/2 DEGREES EAST A DISTANCE OF 69 FEET TO A POINT;
THENCE SOUTHERLY 1 1/2 DEGREES EAST ALONG A LINE PARALLEL WITH THE EASTERLY LINE OF
SOUTH ARLINGTON STREET A DISTANCE OF 85 FEET TO A POINT; THENCE SOUTH 88 1/2 DEGREES
WEST ALONG A LINE PARALLEL WITH THE SOUTHERLY LINE OF JOHNSTON STREET A DISTANCE OF 69
FEET TO THE EAST LINE OF SOUTH ARLINGTON STREET; THENCE NORTH 1 1/2 DEGREES WEST
ALONG THE EASTERLY LINE OF SOUTH ARLINGTON STREET A DISTANCE OF 85 FEET TO THE PLACE OF
BEGINNING, BE THE SAME MORE OR LESS.

PPN: 68-26822 060093004014000 & 68-55645 060093004015001

PARCEL 5:
TRACT A:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO:

AND KNOWN AS BEING LOT #3, IN AN ALLOTMENT MADE FOR CHARLES E. AKERS AND A. D.
ALEXANDER RECORDED IN SUMMIT COUNTY RECORDS IN PLAT BOOK 12, PAGE 21, SUMMIT COUNTY
RECORDS, BE THE SAME MORE OR LESS.

TRACT B:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO:

AND KNOWN AS BEING LOT NUMBER 2 IN AN ALLOTMENT MADE FOR CHARLES E. AKERS AND A. D.
ALEXANDER, AS RECORDED IN PLAT BOOK 12, PAGE 21, SUMMIT COUNTY RECORDS; ALSO THE RIGHT
TO USE FOR DRIVEWAY PURPOSES, IN COMMON WITH THOMAS BROWNSWORD AND MATILDA
BROWNSWORD, THEIR HEIRS OR ASSIGNS, A STRIP OF LAND 4 FEET IN WIDTH AND EXTENDING
FROM FRONT TO REAR OFF THE SOUTHERLY SIDE OF LOT NO. 3, IN AN ALLOTMENT MADE FOR
CHARLES E. AKERS AND A. D. ALEXANDER, AS RECORDED IN PLAT BOOK 12, PAGE 21, SUMMIT
COUNTY RECORDS. SAID STRIP OF LAND IS TO BE USED IN CONNECTION WITH A STRIP OF LAND 4
FEET IN WIDTH AND EXTENDING FROM FRONT TO REAR OFF THE NORTHERLY SIDE OF LOT NO. 2 IN
SAID ALLOTMENT, AND SAID UNITED STRIPS ARE TO BE USED AS A PARTY DRIVEWAY BY THE
PRESENT OWNERS OF SAID LOTS NOS. 2 AND 3, AND THEIR HEIRS OR ASSIGNS.

PPN: 67-57835 060093004018001 & 67-57836 060093004017001

PARCEL 6:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO:

AND KNOWN AS BEING LOT NO. 1 IN AN ALLOTMENT MADE FOR CHARLES E. AKERS AND A. D.
ALEXANDER AND RECORDED IN PLAT BOOK 12, PAGE 21 OF SUMMIT COUNTY RECORDS.

PPN: 67-57834 060093004019001

PARCEL 7:
SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO:

AND KNOWN AS BEING PART OF TRACT 1 FORMERLY SPRINGFIELD TOWNSHIP, NOW CITY OF AKRON
AND MORE PARTICULARLY DESCRIBED AS FOLLOWS; BEGINNING AT A POINT IN THE EASTERLY LINE
OF S. ARLINGTON STREET, WHICH IS 85 FEET SOUTHERLY DISTANT FROM THE INTERSECTION OF
THE EASTERLY LINE OF S. ARLINGTON STREET, WITH THE SOUTHERLY LINE OR JOHNSTON STREET;
THENCE SOUTHERLY 50 FEET ALONG THE EASTERLY LINE OF S. ARLINGTON STREET TO AN IRON PIN;
THENCE EASTERLY AND PARALLEL TO THE SOUTHERLY LINE OF JOHNSTON STREET, A DISTANCE OF
69 FEET TO AN IRON PIN; THENCE NORTHERLY PARALLEL WITH THE EASTERLY LINE OF S.
ARLINGTON STREET, A DISTANCE OF 50 FEET TO A IRON PIN; THENCE WESTERLY PARALLEL TO THE
SOUTHERLY LINE OF JOHNSTON STREET, A DISTANCE OF 69 FEET TO THE PLACE OF BEGINNING, BE
THE SAME MORE OR LESS.
            *PPN-55765*
PPN: 68-5765 060093004016001

---

***Exhibit "A" continues on following pages***

Real Property commonly known as 131 S. High St. Akron, Ohio 44308 and further described as follows:

PARCEL 1:

SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT AND STATE OF OHIO AND KNOWN AS BEING ALL OF SUBLOTS NO. 7 AND NO. 8, BLOCK 18 IN KING'S ADDITION, RECORDED IN PLAT BOOK 1, PAGE 17 OF THE TRANSCRIBED RECORDS OF SUMMIT COUNTY RECORDS.

PARCEL 2:

SITUATED IN THE CITY OF AKRON, COUNTY OF SUMMIT, STATE OF OHIO AND KNOWN AS BEING A PART OF LOTS 43, 44 AND 45, BLOCK 18, KING ALLOTMENT AS RECORDED IN TRANSCRIBED RECORDS, PAGE 17 OF THE SUMMIT COUNTY RECORD OF PLATS AND BEING A SECTION OF THE FIRST PARKING LEVEL OF THE PROPOSED BROADWAY PARKING STRUCTURE AS SHOWN ON PLANS PREPARED BY CARL WALKER FOR THE CITY OF AKRON, MORE FULLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERLY CORNER OF LOT 46, BLOCK 18, KING ALLOTMENT ALSO BEING THE INTERSECTION OF THE NORTHERLY LINE OF BOWERY STREET (66' R/W) WITH THE EASTERLY LINE OF WHEELER LANE (16.5' R/W); THENCE NORTH ½ STERLY ALONG THE EASTERLY LINE OF WHEELER LANE, N 17° 17' 14" E (BEARINGS REFERENCED TO THE OHIO PLANE COORDINATE SYSTEM, NORTH ZONE), 129.29 FEET TO A POINT;

THENCE S 72° 42' 46" E, 9.00 FEET TO THE WESTERLY INSIDE FACE OF THE BROADWAY PARKING STRUCTURE AND THE TRUE PLACE OF BEGINNING FOR THE LAND HEREINAFTER DESCRIBED;

THENCE NORTHEASTERLY ALONG THE WESTERLY INSIDE FACE OF SAID PARKING STRUCTURE, N 17° 17' 14" E, 10.75 FEET TO THE SOUTHERLY FACE OF COLUMN "A-7";

THENCE AROUND THE FACE OF COLUMN "A-7" THE FOLLOWING THREE COURSES:

1) S 72° 42' 46" E, 2.08 FEET TO THE EASTERLY FACE OF SAID COLUMN;
2) N 17° 17' 14" E, 2.00 FEET TO THE NORTHERLY FACE OF SAID COLUMN;
3) N 72° 42' 46" W, 2.08 FEET TO THE WESTERLY INSIDE FACE OF SAID PARKING STRUCTURE;

THENCE NORTHEASTERLY ALONG THE WESTERLY INSIDE FACE OF SAID PARKING STRUCTURE, N 17° 17' 14" E, 21.50 FEET TO THE SOUTHERLY FACE OF COLUMN "A-8";

THENCE AROUND THE FACE OF COLUMN "A-8" THE FOLLOWING THREE COURSES:

1) S 72° 42' 46" E, 2.08 FEET TO THE EASTERLY FACE OF SAID COLUMN;
2) N 17° 17' 14" E, 2.00 FEET TO THE NORTHERLY FACE OF SAID COLUMN;
3) N 72° 42' 46" W, 2.08 FEET TO THE WESTERLY INSIDE FACE OF SAID PARKING STRUCTURE;

THENCE NORTHEASTERLY ALONG THE WESTERLY INSIDE FACE OF SAID PARKING STRUCTURE, N 17° 17' 14" E, 21.50 FEET TO THE SOUTHERLY FACE OF COLUMN "A-9";

THENCE AROUND THE FACE OF COLUMN "A-9" THE FOLLOWING THREE COURSES:

1) S 72° 42' 46" E, 2.08 FEET TO THE EASTERLY FACE OF SAID COLUMN;
2) N 17° 17' 14" E, 2.00 FEET TO THE NORTHERLY FACE OF SAID COLUMN;
3) N 72° 42' 46" W, 2.08 FEET TO THE WESTERLY INSIDE FACE OF SAID PARKING STRUCTURE;

THENCE NORTHEASTERLY ALONG THE WESTERLY INSIDE FACE OF SAID PARKING STRUCTURE, N 17° 17' 14" E, 21.50 FEET TO THE SOUTHERLY FACE OF COLUMN "A-10";

THENCE SOUTHEASTERLY ALONG THE EASTERLY EXTENSION OF THE SOUTHERLY FACE OF COLUMN LINE "10", S 72° 42' 46" E, 2.08 FEET TO THE EASTERLY FACE OF SAID COLUMN;

THENCE NORTHEASTERLY ALONG THE EASTERLY FACE OF COLUMN LINE "10", N 17° 17' 14" E, 2.00 FEET TO THE NORTHERLY FACE OF SAID COLUMN;

THENCE SOUTHEASTERLY ALONG THE EASTERLY EXTENSION OF THE NORTHERLY FACE OF COLUMN LINE "10", S 72° 42' 46" E, 15.25 FEET TO A POINT;

THENCE N 17° 17' 14" E, 19.58 FEET TO THE EASTERLY EXTENSION OF THE SOUTHERLY FACE OF COLUMN LINE "11";

THENCE SOUTHEASTERLY ALONG THE EXTENSION OF THE SOUTHERLY FACE OF SAID COLUMN LINE "11", S 72° 42' 46" E, 27.33 FEET TO A POINT;

THENCE S 17° 17' 14" W, 21.58 FEET TO THE EASTERLY EXTENSION OF THE SOUTHERLY FACE OF COLUMN LINE "10";

THENCE SOUTHEASTERLY ALONG THE EASTERLY EXTENSION OF THE SOUTHERLY FACE OF COLUMN LINE "10", S 72° 42' 46" E, 12.75 FEET TO THE WESTERLY FACE OF A RETAINING WALL, SAID WESTERLY FACE IS 0.35 FEET EASTERLY FROM AND PARALLEL TO THE CENTERLINE OF COLUMN LINE "C" OF SAID PARKING STRUCTURE;

THENCE SOUTHWESTERLY ALONG THE WESTERLY FACE OF SAID RETAINING WALL, S 17° 17' 14" W, 21.50 FEET TO THE NORTHERLY FACE OF COLUMN "C-9";

THENCE AROUND THE FACE OF COLUMN "C-9" THE FOLLOWING THREE COURSES:

1) N 72° 42' 46" W, 1.33 FEET TO THE WESTERLY FACE OF SAID COLUMN;
2) S 17° 17' 14" W, 2.00 FEET TO THE SOUTHERLY FACE OF SAID COLUMN;
3) S 72° 42' 46" E, 1.33 FEET TO THE WESTERLY FACE OF SAID RETAINING WALL;

THENCE SOUTHWESTERLY ALONG THE WESTERLY FACE OF SAID RETAINING WALL, S 17° 17' 14 ' W, 21.50 FEET TO THE NORTHERLY FACE OF COLUMN "C-8";

THENCE AROUND THE FACE OF COLUMN "C-8" THE FOLLOWING THREE COURSES:

1) N 72° 42' 46" W, 1.33 FEET TO THE WESTERLY FACE OF SAID COLUMN;
2) S 17° 17' 14" W, 2.00 FEET TO THE SOUTHERLY FACE OF SAID COLUMN;
3) S 72° 42' 46" E, 1.33 FEET TO THE WESTERLY FACE OF SAID RETAINING WALL;

THENCE SOUTHWESTERLY ALONG THE WESTERLY FACE OF SAID RETAINING WALL, S 17° 17' 14" W, 21.50 FEET TO THE NORTHERLY FACE OF COLUMN "C-7";

THENCE AROUND THE FACE F COLUMN "C-7" THE FOLLOWING THREE COURSES:

1) N 72° 42' 46" W, 1.33 FEET TO THE WESTERLY FACE OF SAID COLUMN;
2) S 17° 17' 14" W, 2.00 FEET TO THE SOUTHERLY FACE OF SAID COLUMN;
3) S 72° 42' 46" E, 1.33 FEET TO THE WESTERLY FACE OF SAID RETAINING WALL;

THENCE SOUTHWESTERLY ALONG THE WESTERLY FACE OF SAID RETAINING WALL, S 17° 17' 14" W, 10.75 FEET TO A POINT;

THENCE NORTHWESTERLY ALONG A DIVISION LINE BETWEEN ZION LUTHERAN PARKING AND PARKING FOR HIGH STREET CHRISTIAN CHURCH, N 72° 42' 46" W, 57.41 FEET TO THE TRUE PLACE OF BEGINNING FOR THE LAND HEREINBEFORE DESCRIBED AND CONTAINING 0.1208 OF A ACRE OF LAND (5,264 SQUARE FEET), MORE OR LESS.

EXCEPTING FROM PARCEL 2, THE AIR RIGHTS AS RETAINED IN OR VOLUME 2002, PAGE 1186 OF SUMMIT COUNTY RECORDS.

Label Matrix for local noticing
0647-5
Case 19-53062-amk
Northern District of Ohio
Akron
Thu Oct  7 20:24:59 EDT 2021

HD Davis CPA's
7981 Hills and Dales Road NE
Massillon, OH 44646-5242

Herring Bank
Burdett Morgan Williamson & Boykin
co C. Jared Knight
701 S. Taylor, Suite 324
Amarillo, TX 79101-2417

Ohio Department of Taxation
Attn: Bankruptcy Division
PO Box 530
Columbus, OH 43216-0530

Touch of Heaven Ministries, Inc.
131 S High Street
Akron, OH 44308-1410

United States Trustee
Office of the U.S. Trustee
H.M. Metzenbaum U.S. Courthouse
201 Superior Avenue East Suite 441
Cleveland, OH 44114-1234

455 John F. Seiberling Federal Building
US Courthouse
2 South Main Street
Akron, OH 44308-1848

ABM Industry Groups LLC
132 S High St
Akron, OH  44308-1411

AT&T
PO Box 6416
Carol Stream, IL  60197-6416

Aarons
400 Galleria Pkwy SE Ste 300
Atlanta, GA  30339-3182

Adair Asset Management
C/O BMO 16
PO Box 1414
Minneapolis, MN  55480-1414

BB&T Commercial Equipment Capital Corp.
c/o Christopher Lynch
599 Lexington Ave., 22nd Fl.
New York, NY 10022-7650

BSB Leasing, Inc.
5403 Olympic Dr NW Ste 200
Gig Harbor, WA  98335-1853

Bennett Epoxy Floors
757 Fairwood Rd
New Franklin, OH  44319-4760

Bradley S. Le Boeuf
P.O. Box 55
Akron, OH 44309-2555

Bradley S. Le Boeuf Co., L.P.A.
P.O. Box 55
Akron, OH 44309-2555

Certified Professional Restoration
435 Applegrove St NW
North Canton, OH  44720-1617

City of Akron
Utilities Business Office
146 S High St Ste 211
Akron, OH  44308-1424

County Fire Protection Inc.
4620 Crystal Pkwy
Kent, OH  44240-8020

DOMINION ENERGY OHIO
PO BOX 5759
CLEVELAND, OH 44101-0759

Dominion Energy Ohio
PO Box 26785
Richmond, VA  23261-6785

First Capital Equipment Leasing Cor
32 Wolf Hill Rd
East Sandwich, MA  02537-1511

Fromby Construction
1487 Tyler St
Akron, OH  44307-1036

Herring Bank
2201 Civic Cir
Amarillo, TX 79109-1846

KRISTEN M. SCALISE
SUMMIT COUNTY FISCAL OFFICER
175 S. MAIN STREET
AKRON, OH 44308-1306

Kimble
PO Box 448
Dover, OH  44622-0448

Kimble Recycling & Disposal, Inc
c/o Nathan Vaughan
3596 SR 39, NW
Dover, OH 44622-7232

Kristen M. Scalise Summit County Fi
53 University Ave Fl 7
Akron, OH  44308-1608

(p)OHIO ATTORNEY GENERAL'S OFFICE
ATTN ATTN BANKRUPTCY UNIT COLLECTIONS ENFORCEMENT
30 E BROAD ST
14TH FLOOR
COLUMBUS OH 43215-3414

(p)OHIO BUREAU OF WORKERS COMPENSATION
LAW SECTION BANKRUPTCY UNIT
P O BOX 15567
COLUMBUS OH 43215-0567

```
Ohio Department of Taxation          Ohio Edison                          Otis Elevator
P.O. Box 530                         PO Box 3687                          PO Box 73579
Columbus, OH 43216-0530              Akron, OH  44309-3687                Chicago, IL  60673-7579



Overhead Door Company of Akron       The Ohio Department of Commerce       Volan Insurance Agency
1750 Newberry St                     Division of Industrial Compliance     343 W Bagley Rd Ste 208
Cuyahoga Falls, OH  44221-4018       6606 Tussing Road                     Berea, OH  44017-1357
                                     P.O. Box 4009
                                     Reynoldsburg, Ohio  43068-9009


Waste Management of Ohio             Charles Tyler Sr                      James Horovitz
PO Box 4648                          137 S. Main Street                    Coldwell Banker Schmidt Realty
Carol Stream, IL  60197-4648         Suite 206                             9293 State Route 43
                                     Akron, OH 44308-1416                  Streetsboro, OH 44241-5374


James F. Hausen
Bates and Hausen, LLC
215 E. Waterloo Road Suite 17
Akron, OH 44319-1236




        The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
        by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Ohio Attorney General               Ohio Bureau of Workers' Compensation   End of Label Matrix
150 E Gay St Fl 21                   Legal Division Bankruptcy Unit         Mailable recipients     39
Columbus, OH  43215-3191             PO Box 15567                           Bypassed recipients      0
                                     Columbus, Ohio 43215-0567              Total                   39
```